```
                 UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                         CRIMINAL ACTION NO. 2:13-00277

**BRANDON SOLOMON**

<u>MEMORANDUM OPINION AND ORDER</u>

The court makes the following findings of fact and conclusions of law from the evidence received at the hearing on September 22, 2014.

On Saturday, July 26, 2014, Jalyn Martin lived in an apartment at 510 Vista View in Charleston, West Virginia, with her boyfriend, Jason Sledge. She had not paid her rent of $78 per month since October 2013 and was threatened with eviction. Earlier that day, a relative gave her $1,200 in cash which was sufficient to pay her back rent and late fees of about $940.

Before attending a funeral that day at Emmanuel Baptist Church, she handed the money to Jason as a protective measure. She then went on to the funeral that was held during

the day for Africa Scott who is the mother of Ajee Scott with whom Jalyn had grown up.  They refer to each other as sisters, but they have no blood relationship.  At the funeral, Ajee and Jalyn sat with each other on the front row.

On that same occasion, Jalyn spoke to the girlfriend of Demetrius Pope, whose nickname is "Meech."  Jalyn was excited to tell her that she had received the money for her rent with enough left over to "go out."  After the funeral and after the reception held at Second Avenue Center, Jalyn returned to her home while it was still daylight.  She had time for a drink or two with Jason.  As it was nearing dark, sometime between 8:00 and 9:00 p.m., a neighbor, LaShonda Edwards, came to their apartment and, when she left to get something from her car, left the door unlocked.

At that point, the defendant, Brandon Solomon, who went by the nickname of "Fresh," and Meech, who Jalyn knew was fitted with a prosthetic leg, walked into her apartment, each with a handgun pointed at Jalyn and Jason.  Jason describes the gun held by the defendant as being a small silver and black handgun, and the gun in the hands of Meech as being a small black handgun, both looking like semiautomatics.  While Meech

2

went to the back room, Brandon stood guard over Jalyn and Jason and ordered Jason to empty his pockets on the table.  Jason did as instructed and laid out the $1,200 in cash that Jalyn had placed in his possession.  Meech returned from the back room after having seized some jewelry that he found there.  He had in his hand an iron with which he hit Jason in the face, momentarily stunning him.  At the same time, Meech told the defendant to shoot Jason, which the defendant made no effort to do.  The intruders left immediately, having been there only two or three minutes.

As they left, Meech threatened them that if Jalyn and Jason disclosed the robbery they would be killed.  The blow received by Jason was not a very serious one, though painful.  Both the striking of Jason and the threats are treated simply as an attempt to intimidate Jalyn and Jason to the end that they would not report the events that had just taken place in their home.

Upon entry of the defendant and Meech into her apartment, Jalyn immediately recognized both.  She had known the defendant for a year, having seen him on numerous occasions with her "sister" Ajee.  She also knew Meech.  During the course of

3

the robbery Jalyn asked the defendant, "Fresh, why are you doing this?"  He responded, "Stop saying my name."  Jason also recognized the defendant, having known him for about a year.  He did not know Meech.

After the robbers left, Jalyn immediately ran to a neighbor's residence, called her mother to report the events, and asked what she should do.  Upon her mother's advice, she promptly called the police.  Patrolman D. L. Williams of the Charleston Police Department responded to the call before 11:00 p.m.  He took the handwritten statement of Jason wherein he stated that Brandon and a man with a fake leg ran in, both with guns, and robbed "us of our $1,500."  He added that the one with the fake leg had hit him in the face with an iron and had put guns to both of their heads.  In the statement he also noted the amount taken as if it consisted of $1,000 in $20 bills, along with three $100 bills and three $50 bills, which would aggregate $1,450.  The handwritten statement received by Patrolman Williams is memorialized as having been taken by Patrolman Williams, starting at 11:10 p.m.  The next day around noon, the defendant called Jalyn to apologize and said he would pay her back.  He never did.

Surveillance videos of the fifth floor of Vista View on which Jalyn's apartment is located are the source of three images introduced into evidence. Presumably those images were created on July 26, 2014. They somewhat vaguely show two black males on the fifth floor, one in a white shirt with a ball cap turned backwards on his head and the other in a fuchsia colored shirt. One image shows the two exiting the elevator and the other two images show them at the door of the elevator. Detective Charles Whittington of the Charleston Police Department, who also investigated this case, knows the defendant from a prior proceeding and states that he believes the man in the white shirt with the ball cap looks like the defendant. Detective Whittington has also reviewed the surveillance video tape and states that the same two men are shown down the hall entering Jalyn's apartment number 510.

As noted, in his statement given to Patrolman Williams, Jason stated that they had been robbed of $1,500 but itemized the bills as if the amount were $1,450. Several days later he repeated the reference to $1,450 in a recorded statement given to Detective Whittington who found his statements consistent. Since then, Jason agrees that the amount

of cash that was the subject of the robbery came to $1,200, as does Jalyn.

The court finds by a preponderance of the evidence that the defendant was, on July 26, 2014, in Charleston, West Virginia, in possession of a handgun with which he committed an act of robbery.  The robbery is a violation of state law.  The possession of the handgun is a violation of both federal and state law inasmuch as the defendant is a convicted felon.  Each of those violations of the law is, of course, a violation of his supervised release.

The Clerk is directed to forward copies of this written opinion and order to the defendant, all counsel of record and the United States Probation Department.

DATED: October 24, 2014

_____
John T. Copenhaver, Jr.
United States District Judge

6